UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 4:21-CR-190 SEP (SRW) |
| | ) |
| RAYMOND D. COOPER, | ) |
| | ) |
|     Defendant. | ) |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This matter comes before the Court on Defendant Raymond Cooper's Motion to Suppress Evidence (ECF No. 84). All pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). The undersigned recommends the motion be denied.

**I.    BACKGROUND**

On March 17, 2021, a grand jury charged Defendant with one count of solicitation of child pornography and one count of transfer of obscene material to a minor. After several extensions of time to file pretrial motions and two changes of counsel, his counsel filed a motion to suppress evidence. In the interim, Defendant filed several *pro se* documents. (ECF Nos. 47, 60, 76). Ultimately, the Court denied any of the relief requested in Defendant's *pro se* filings because he was, and still is, represented by counsel. (ECF No. 77). Defense counsel filed the Motion to Suppress. (ECF No. 84). The Government filed a response to Defendant's counsel's motion to suppress, (ECF No. 85), and the Court scheduled an evidentiary hearing. In addition to the motion filed by his attorney, Defendant filed a *pro se* letter to the Court raising two

1

additional arguments.[1] (ECF No. 87). The Court took the unusual step of granting Mr. Cooper permission to present his *pro se* arguments at the evidentiary hearing. Defendant argues Officer Orr did not follow the procedures required in Missouri Revised Statute § 447.010 regarding the finding of lost property. He also asserts law enforcement officers violated his Fourth Amendment rights when they communicated with him on Facebook without disclosing they were law enforcement officers. Defendant filed three *pro se* documents in further support of his arguments after the hearing. The Court has considered both the arguments of counsel for the Defendant as well as the *pro se* arguments submitted by Defendant in ECF No. 87 and the subsequent documents.

On November 10, 2022, the parties appeared for an evidentiary hearing. The Government offered testimony of Officer Ryan Orr with the Clark County Sheriff's Office and Kenneth Harrell. The defense did not offer any witnesses, but defense counsel elicited testimony from the Government's witnesses on cross-examination. The parties filed post-hearing briefs. These matters were fully briefed and submitted on December 19, 2022. The matter is now ready for resolution.

The undersigned has carefully considered the evidence offered and admitted at the evidentiary hearing, including the credibility of the Government's witnesses. The undersigned has also considered the arguments of the parties both at the hearing and in their written submissions. Based upon the evidence adduced at the hearing, the oral arguments made on the record, and the written submissions of the parties, the undersigned makes the following findings of fact and conclusions of law.

---

[1] Defendant also raised an issue with the Government's disclosure of certain evidence. At the hearing, the parties agreed that issue had been resolved, so the Court will not discuss it further.

## II.     FINDINGS OF FACT

On August 4, 2019, Kenneth Harrell, who was 16 years old at the time, found a set of keys in the town square in Kahoka, Missouri. The town square is a park that has a basketball court, a playground with a slide and swings, a gazebo, and a bench area to sit. Mr. Harrell found the set of keys next to the slide. There was no one else around besides young children, and it did not appear to Mr. Harrell that the keys belonged to anyone in the park. Mr. Harrell then took the keys to the police department.

Officer Ryan Orr, who has been a police officer for ten years, was working on August 4, 2019, when at approximately 6:30 p.m., Mr. Harrell turned in the set of keys he had found. The set of keys included five silver keys, a black metal container, and a purple flash drive. Mr. Harrell told Officer Orr he found the keys in the city park. After receiving the keys, Officer Orr took them to his desk and put the flash drive into his computer to see if he could identify the owner of the keys and flash drive.

When Officer Orr inserted the flash drive into his computer, a series of folders appeared, and one was titled, "Photos." Officer Orr believed he may be able to identify someone in a photo which could lead him to the owner of the set of keys. Officer Orr clicked on the folder; however, the images which opened were photographs of child pornography. After closing the "Photos" folder, Officer Orr opened a second folder and found photographs of Defendant Raymond Cooper's Facebook profile picture. He recognized Defendant from previous contact in Kahoka. Officer Orr testified he did not know the Sheriff's Office had previously prosecuted Defendant; he only knew Defendant from the two seeing each other on the street.

After discovering the child pornography and Defendant's photo, Officer Orr placed the set of keys, including the flash drive, into evidence and contacted his supervisor. Officer Orr's

3

supervisor told him to contact Defendant. Officer Orr did not find Defendant at home, but spoke to his girlfriend who was residing with him at the time. The girlfriend stated the keys and flash drive belonged to Defendant.

### III. CONCLUSIONS OF LAW

In his Motion to Suppress, Defendant asserts the search of the flash drive violates Defendant's Fourth Amendment rights, because law enforcement did not get a search warrant prior to opening and searching the flash drive. According to Defendant, the only possible exception to the warrant requirement that could apply is the community caretaking function. However, Defendant argues even this exception does not apply to these circumstances.

#### A. Search of the Flash Drive

The Fourth Amendment protects individuals from "unreasonable searches and seizures" by the government. U.S. Const. amend. IV. For a search to be reasonable, the government generally must obtain a warrant supported by probable cause before "physically intruding on constitutionally protected areas" or otherwise searching areas or items in which an individual has a reasonable expectation of privacy. *Florida v. Jardines*, 569 U.S. 1, 8-10 (2013). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 573 U.S. 373, 382 (2014).

One such exception is the community caretaker function. "[P]olice officers are not only permitted, but expected, to exercise what the Supreme Court has termed 'community caretaking functions.'" *Winters v. Adams*, 254 F.3d 758, 763 (8th Cir. 2001) (quoting *United States v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993)). The "community caretaking" aspect of local law enforcement is described as those activities that are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v.*

4

*Dombrowski*, 413 U.S. 433, 441 (1973). The Eighth Circuit "has recognized, under the 'community caretaker' classification, that noninvestigatory searches and seizures may be justified in certain limited situations." *United States v. Harris*, 747 F.3d 1013, 1017 (8th Cir. 2014) (collecting cases); *see also United States v. Rabenberg*, 766 F.2d 355, 356 (8th Cir. 1985) (stating the Supreme Court has recognized a police officer may sometimes be required to search private property that has lawfully come into official custody when carrying out community caretaking or administrative duties).[2] A search or seizure under the community caretaking function is reasonable if "the governmental interest in law enforcement's exercise of that function, based on specific and articulable facts, outweighs the individual's interest in freedom from government intrusion." *United States v. Smith*, 820 F.3d 356, 360 (8th Cir. 2016).

      In this case, the Government argues Officer Orr was acting in his role as a community caretaker when he opened the flash drive in an attempt to find the owner of the set of keys. The Court agrees. The identification of the owner of lost property is a governmental interest that outweighs the individual's interest in freedom from government intrusion. The Second Circuit similarly found that "although an owner retains some privacy interest in property that is merely lost or stolen, . . . that interest is outweighed by the interest of law enforcement officials in identifying and returning such property to the owner." *Gudema v. Nassau Cty.*, 163 F.3d 717, 722 (2d Cir. 1998). The Second Circuit reaffirmed this holding in *United States v. Stacy*, 802 Fed. App'x 611 (2d Cir. 2020). In *Stacy*, a woman saw a man on a bicycle drop a cell phone. *Id*. at 612. She turned the phone into the police, who accessed it to identify its owner. *Id*. When the officer opened the phone, she saw an image of child pornography. *Id*. The Second Circuit stated, "[a]lthough police officers usually require a warrant to conduct a search, they may execute a

---

[2] In *Caniglia v. Strom*, the Supreme Court held there is no standalone community caretake doctrine that justifies warrantless searches and seizures in the home. 141 S. Ct. 1596, 1599-1600 (2021). The Supreme Court made clear warrantless entry into a home is different than for vehicles, or other objects. *Id*. at 1600.

limited, warrantless search of lost property to identify the owner and inventory the item(s)." *Id*. at 613.

The Eighth Circuit has also held identification and recovery of stolen property outweighs an individual's privacy interest in the items. *United States v. Sumlin*, 909 F.2d 1218, 1220 (8th Cir. 1990). In *Sumlin*, the defendant was robbed of her purse one night. *Id*. at 1219. She gave a statement to police describing her purse and its contents. *Id*. Near the spot where the defendant was robbed, officers found a purse along with various personal items scattered nearby. *Id*. An officer opened the purse to look for identification, and found a large quantity of small cellophane bags containing a fine white powdery substance, later determined to be cocaine. *Id*. The officer continued to look and found a bank pass-book for a savings account in the defendant's name. *Id*. The Eighth Circuit upheld the warrantless search of the purse by finding that the seeking of the identification of the owner of the purse justified the intrusion, and the officer's actions were reasonable under the circumstances. *Id*. at 1220. *See also United States v. Wilson*, 984 F. Supp. 2d 676, 683 (E.D. Ky. 2013) ("When containers have been turned over to the police, an officer may validly search lost property to the extent necessary for identification purposes." (quotation omitted)).

In the present case, the lost set of keys and flash drive had no information from which the officer could identify the owner. Although police officers usually require a warrant to conduct a search of a flash drive, it was reasonable for Officer Orr to open the flash drive to try and find the owner. His approach to first open the photos folder in hope of recognizing someone in a photo is reasonable when taking into consideration that Kahoka is a city of approximately 2,000 individuals. The first photo he saw was of child pornography. From there, he opened an additional folder, continuing his attempt to identify the owner, which he was able to do by

6

finding a photo of Defendant Cooper's Facebook profile. This legitimate governmental interest, identification of the lost property, outweighs Defendant's privacy interest in his lost flash drive and keys.

Defendant argues the search of the flash drive also violates his Fourth Amendment rights because Officer Orr did not follow the policies established in Missouri Revised Statute § 447.010. That statute, titled "Duty of persons finding lost money, goods," states a person who finds money or property with a value of ten dollars or more "shall, within ten days, make an affidavit before some judge of the circuit court of the county, stating when and where he found the same, that the owner is unknown to him, and that he has not secreted, withheld or disposed of any part thereof." Mo. Rev. Stat. § 447.010.

Defendant provides no support for his argument that the failure to comply with a Missouri state statute violates the Fourth Amendment of the United States Constitution. Nor could the Court find any caselaw to support such an argument. In fact, none of the cases that discuss this statute are criminal cases. *See Buchholz Mortuaries, Inc. v. Dir. of Revenue*, 113 S.W.3d 192 (Mo. 2003); *Foster v. Fidelity Safe Deposit Co.*, 174 S.W. 376 (Mo. 1915); *Hoagland v. Forest Park Highlands Amusement Co.*, 70 S.W. 878 (Mo. 1902); *State v. One Hundred Fifty-Two Thousand, Seven Hundred Sixty, and 00/100 Dollars*, 87 S.W.3d 374 (Mo. Ct. App. 2002); and *State ex rel. Scott v. Buzard*, 144 S.W.2d 847 (Mo. Ct. App. 1940).

Furthermore, the Eighth Circuit has held "[e]ven when law enforcement fails to conduct a search according to standardized procedures," suppression of the evidence discovered is not mandated. *United States v. Rowland*, 341 F.3d 774, 780 (8th Cir. 2003); *United States v. Smith*, 715 F.3d 1110, 1117 (8th Cir. 2013). "The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive'

7

means." *Illinois v. Lafayette*, 462 U.S. 640, 648 (1983). While Defendant may have preferred that Officer Orr follow the provisions of § 447.010, nothing in the Fourth Amendment requires him to have done so. The Court need not suppress the search on this basis.

    **B.**    **Facebook Communications**

Defendant asserts a *pro se* argument that a law enforcement officer violated his rights under the Constitution by engaging in conversations with him on Facebook without identifying himself as a law enforcement officer. According to Defendant's Motion to Suppress, after the search of the flash drive where Officer Orr discovered images of child pornography, the Kahoka Sheriff's Department contacted the FBI, who contacted Detective Steve Feeney. Detective Feeney set up an undercover Facebook profile and engaged in conversation with Defendant eliciting self-incriminating statements from Defendant. Defendant argues he did not consent to these communications because Detective Feeney used deception to gain consent by creating a fake Facebook profile.

Defendant's arguments are misplaced. It is well-established that law enforcement may use informants, including undercover agents, and an informant's failure to disclose his true identity does not render consent to his presence invalid. *See Hoffa v. United States*, 385 U.S. 293, 302 (1966); *Lewis v. United States*, 385 U.S. 206, 208-09 (1966). Additionally, there is no violation of Defendant's Fifth Amendment privilege against self-incrimination because Defendant was not in custody. The Fifth Amendment privilege against self-incrimination "prohibits admitting statements given by a suspect during 'custodial interrogation' without a prior warning." *Illinois v. Perkins*, 496 U.S. 292, 296 (1990). When Defendant was communicating with an undercover agent through his Facebook profile, he was not in custody. "Conversations between suspects and undercover agents do not implicate the concerns

8

underlying *Miranda*." *Id*. Defendant's constitutional rights were not violated when an undercover officer communicated with Defendant on Facebook without disclosing he was a law enforcement officer.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant Raymond Cooper's Motion to Suppress Evidence (ECF No. 84) be **DENIED**.

The parties are advised that they have 14 days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1). Failure to timely file objections may result in a waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

A trial date will be set by further order of the Court.

So Ordered this 13th day of January, 2023.

_____
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**